(MANx), CLOSED, DISCOVERY, MANADR, TRANSFERRED

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### (Western Division − Los Angeles)
### CIVIL DOCKET FOR CASE #: 2:11−cv−07391−JHN −MAN

| | |
|---|---|
| Jill Engledow v. Mentor Corporation et al | Date Filed: 09/08/2011 |
| Assigned to: Judge Jacqueline H. Nguyen | Date Terminated: 11/22/2011 |
| Referred to: Magistrate Judge Margaret A. Nagle | Jury Demand: Both |
| Case in other court:  Superior Court of CA for the County of Los Angeles, BC 460012 | Nature of Suit: 365 Personal Inj. Prod. Liability |
| Cause: 28:1441 Notice of Removal − Product Liability | Jurisdiction: Diversity |

**Plaintiff**

**Jill Engledow**
*an individual*

represented by **Amanda Heather Kent**
Girardi and Keese
1126 Wilshire Boulevard
Los Angeles, CA 90017
213−977−0211
Fax: 213−481−1554
Email: akent@girardikeese.com
*ATTORNEY TO BE NOTICED*

**Amy F Solomon**
Girardi Keese
1126 Wilshire Boulevard
Los Angeles, CA 90017
213−977−0211
Fax: 213−481−1554
Email: asolomon@girardikeese.com
*ATTORNEY TO BE NOTICED*

**Thomas Vincent Girardi**
Girardi &Keese
1126 Wilshire Boulevard
Los Angeles, CA 90017
213−977−0211
Fax: 213−481−1554
Email: tgirardi@girardikeese.com
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Mentor Corporation**
*a California corporation*
*TERMINATED: 09/08/2011*

**Defendant**

**Gynecare Inc**
*a California Corporation*
*TERMINATED: 09/08/2011*

**Defendant**

**Ethicon Inc**
*a New Jersey corporation*
*TERMINATED: 09/08/2011*

**Defendant**

**Johnson and Johnson**
*a New Jersey corporation*
*TERMINATED: 09/08/2011*

<u>**Defendant**</u>

**Boston Scientific Corporation**
*a Massachusetts corporation*
*TERMINATED: 09/08/2011*

<u>**Defendant**</u>

**American Medical Systems Inc**
*a corporation licensed to do business in*
*California*

represented by **Janet H Kwuon**
Reed Smith LLP
355 South Grand Avenue Suite 2900
Los Angeles, CA 90071
213−457−8000
Fax: 213−457−8080
Email: jkwuon@reedsmith.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amy B Alderfer**
Greenberg Traurig LLP
2450 Colorado Avenue Suite 400E
Santa Monica, CA 90404
310−586−7700
Fax: 310−586−7800
Email: alderfera@gtlaw.com
*TERMINATED: 10/04/2011*
*ATTORNEY TO BE NOTICED*

**Erica Yen**
Reed Smith LLP
355 South Grand Avenue Suite 2900
Los Angeles, CA 90071−1514
213−457−8113
Fax: 213−457−8080
Email: eyen@reedsmith.com
*ATTORNEY TO BE NOTICED*

**Natasha Sung**
Reed Smith LLP
355 South Grand Avenue Suite 2900
Los Angeles, CA 90071
213−457−8000
Fax: 213−457−8080
Email: nsung@reedsmith.com
*ATTORNEY TO BE NOTICED*

**Richard G Merrill**
Greenberg Traurig LLP
2450 Colorado Avenue Suite 400E
Santa Monica, CA 90404
310−586−7700
Fax: 310−586−7800
Email: merrillr@gtlaw.com
*TERMINATED: 10/04/2011*
*ATTORNEY TO BE NOTICED*

**Robert J Herrington**
Greenberg Traurig LLP
2450 Colorado Avenue Suite 400 East
Santa Monica, CA 90404
310−586−7816
Fax: 310−586−0219

Email: herringtonr@gtlaw.com
*TERMINATED: 10/04/2011*
*ATTORNEY TO BE NOTICED*

**Veronica Kuiumdjian**
Reed Smith
355 South Grand Avenue, Suite 2900
Los Angeles, CA 90071
213−457−8000
Email: vkuiumdjian@reedsmith.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**Does**
*one through one hundred*

| Date Filed | # | Docket Text |
|---|---|---|
| 09/08/2011 | 1 | NOTICE OF REMOVAL from Superior Court for the CA for the County of Los Angeles, case number BC 460012 with Conformed filed copy of summons and complaint. Case assigned to Judge Jacqueline H. Nguyen, Discovery to Magistrate Judge Margaret A. Nagle; Demand for Jury Trial. (Filing fee $ 350 Paid. ), filed by Defendant American Medical Systems Inc. (et) (Additional attachment(s) added on 9/12/2011: # 1 Ntc of Asgmt, # 2 Civil Cover Sheet) (mg). (Entered: 09/09/2011) |
| 09/08/2011 | | CONFORMED COPY OF REQUEST FOR DISMISSAL filed by Plaintiff Jill Engledow as to Boston Scientific Corporation, Ethicon Inc, Gynecare Inc, Johnson and Johnson, Mentor Corporation, only, without prejudice, each party to bear its own costs. [Filed in State Court on 8/31/2011 Submitted Attached to Notice of Removal] (et) (Entered: 09/09/2011) |
| 09/08/2011 | 2 | NOTICE TO ADVERSE Party of Filing of Notice of Removal to Federal Court filed by Defendant American Medical Systems Inc. (et) (mg). (Entered: 09/09/2011) |
| 09/08/2011 | 3 | DISCLOSURE STATEMENT AND CERTIFICATION AND NOTICE of Interested Parties filed by Defendant American Medical Systems Inc, identifying Corporate Parent Endo Pharmaceuticals Holdings Inc for American Medical Systems Inc. (et) (mg). (Entered: 09/09/2011) |
| 09/08/2011 | 4 | NOTICE TO PARTIES OF ADR PROGRAM filed. (et) (Entered: 09/09/2011) |
| 09/12/2011 | 5 | STIPULATION Extending Time to Answer the complaint as to American Medical Systems Inc answer now due 10/14/2011, re Notice of Removal, 1 filed by Defendant American Medical Systems Inc.(Alderfer, Amy) (Entered: 09/12/2011) |
| 09/30/2011 | 6 | REQUEST to Substitute attorney Janet H. Kwuon in place of attorney Amy B. Alderfer filed by Defendant American Medical Systems Inc. Request set for hearing on 10/17/2011 at 08:30 AM before Judge Jacqueline H. Nguyen. (Yen, Erica) (Entered: 09/30/2011) |
| 09/30/2011 | 7 | REQUEST for Order for on Request for Approval of Substitution of Attorney filed by Defendant American Medical Systems Inc. Request set for hearing on 10/17/2011 at 08:30 AM before Judge Jacqueline H. Nguyen. (Yen, Erica) (Entered: 09/30/2011) |
| 10/03/2011 | 8 | IN CHAMBERS ORDER CONTINUING MOTION HEARING TO OPEN CIVIL MOTION HEARING DATE by Judge Jacqueline H. Nguyen: re REQUESTS to Substitute attorney 6 , 7 . The following motion(s) was/were filed and noticed for hearing on the Court's October 17, 2011 calendar. At the time of filing, this date was already closed for further civil motions. Accordingly, the Court hereby continues the hearing date of the following motion: REQUEST to Substitute attorney filed by Defendant American Medical Systems Inc. [6 to Monday, November 7, 2011 at 2:00 p.m. (ama) (Entered: 10/03/2011) |

| 10/03/2011 | 9 | NOTICE of Change of Attorney Information for attorney Janet H Kwuon counsel for Defendant American Medical Systems Inc. Changing e−mail to jkwuon@reedsmith.com. Adding Janet H. Kwuon as attorney as counsel of record for American Medical Systems, Inc. for the reason indicated in the G−06 Notice. Filed by defendant American Medical Systems, Inc. (Kwuon, Janet) (Entered: 10/03/2011) |
|---|---|---|
| 10/04/2011 | 10 | ORDER ON REQUEST FOR APPROVAL OF SUBSTITUTION OF ATTORNEY by Judge Jacqueline H. Nguyen: granting 6 Request to Substitute Attorney Janet H. Kwuon for defendant American Medical Systems Inc. (ama) (Entered: 10/04/2011) |
| 10/13/2011 | 11 | STIPULATION for Order to File First Amended Complaint by October 21, 2011, and Respond to First Amended Complaint by November 4, 2011 filed by Defendant American Medical Systems Inc. (Attachments: # 1 Proposed Order)(Sung, Natasha) (Entered: 10/13/2011) |
| 10/14/2011 | 12 | ORDER GRANTING STIPULATION TO FILE FIRST AMENDED COMPLAINT BY OCTOBER 21, 2011, AND RESPOND TO FIRST AMENDED COMPLAINT BY NOVEMBER 4, 2011 by Judge Jacqueline H. Nguyen: re Stipulation for Order 11 . (ama) (Entered: 10/14/2011) |
| 10/14/2011 | 13 | ORDER FOR RULE 26 JOINT SCHEDULING REPORT by Judge Jacqueline H. Nguyen: Deadline to File Joint Report: November 21, 2011. READ THIS ORDER CAREFULLY. IT DIFFERS IN SOME RESPECTS FROM THE LOCAL RULES. (ama) (Entered: 10/14/2011) |
| 10/19/2011 | 14 | FIRST AMENDED COMPLAINT against defendants American Medical Systems Inc, Does amending Notice of Removal, 1 ,filed by plaintiff Jill Engledow (bp) (Additional attachment(s) added on 10/20/2011: # 1 summons) (bp). (Entered: 10/20/2011) |
| 10/19/2011 | | 21 DAY Summons Issued re Amended Complaint 14 as to defendants American Medical Systems Inc, Does. (bp) (Entered: 10/20/2011) |
| 10/27/2011 | 15 | STIPULATION for Order to File Corrected First Amended Complaint by October 28, 2011, and for Defendant American Medical Systems, Inc. to Respond by November 18, 2011 filed by Defendant American Medical Systems Inc.(Sung, Natasha) (Entered: 10/27/2011) |
| 10/28/2011 | 16 | STIPULATION TO FILE CORRECTED FIRST AMENDED COMPLAINT BY OCTOBER 28, 2011, AND FOR DEFENDANT AMERICAN MEDICAL SYSTEMS, INC. TO RESPOND BY NOVEMBER 18, 2011 by Judge Jacqueline H. Nguyen, (bp) (Entered: 10/28/2011) |
| 10/31/2011 | 17 | [CORRECTED] FIRST AMENDED COMPLAINT against defendants American Medical Systems Inc, Does amending Amended Complaint 14 ,filed by plaintiff Jill Engledow (bp) (Additional attachment(s) added on 11/2/2011: # 1 summons) (bp). (Entered: 11/02/2011) |
| 10/31/2011 | | 21 DAY Summons Issued re Amended Complaint 17 as to defendants American Medical Systems Inc, Does. (bp) (Entered: 11/02/2011) |
| 11/18/2011 | 18 | STIPULATION to Transfer Case to The United States District Court, District of Delaware filed by defendant American Medical Systems Inc. (Attachments: # 1 Proposed Order)(Kuiumdjian, Veronica) (Entered: 11/18/2011) |
| 11/18/2011 | 19 | ANSWER to Amended Complaint 17 filed by defendant American Medical Systems Inc.(Kuiumdjian, Veronica) (Entered: 11/18/2011) |
| 11/21/2011 | 20 | REPORT of JOINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 26(f) AND LOCAL RULE 26−1 filed by Plaintiff Jill Engledow. (Kent, Amanda) (Entered: 11/21/2011) |
| 11/22/2011 | 21 | ORDER GRANTING TRANSFER OF ACTION TO THE UNITED STATES DISTRICT COURT, DISTRICT OF DELAWARE by Judge Jacqueline H. Nguyen. IT IS HEREBY ORDERED THAT this action is transferred to the United States District Court, District of Delaware (MD JS−6. Case Terminated.) (Attachments: # 1 transfer letter) (bp) (Entered: 11/22/2011) |

| 11/22/2011 | 22 | TRANSMITTAL of documents: Electronic Documents are accessible through Pacer. (bp) (Entered: 11/22/2011) |
| 11/23/2011 | 23 | RECEIVED Notice of Receipt of Electronic Case Transferred from California Centralhas been opened in District of Delaware as case 1:11−cv−01157 filed 11/23/2011.(yl) (Entered: 11/23/2011) |

GIRARDI | KEESE
THOMAS V. GIRARDI – BAR NO. 36603
AMY FISCH SOLOMON – BAR NO. 140333
AMANDA KENT- BAR NO. 258298
1126 Wilshire Boulevard
Los Angeles, California 90017
(213) 977-0211
Attorneys For Plaintiff

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JILL ENGLEDOW, an individual, | Case No. **2:11-cv-07391-JHN -MAN** |
| Plaintiff, | **[CORRECTED] FIRST AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL** |
| vs. | |
| AMERICAN MEDICAL SYSTEMS, INC., a corporation licensed to do business in California, DOE MANUFACTURERS one through one hundred, and DOES 1 to 100. | 1. Strict Products Liability- Failure to Warn<br>2. Strict Liability<br>3. Negligence |
| Defendants. | 4. Breach of Express Warranty<br>5. Fraud<br>6. Fraud by Concealment<br>7. Negligent Misrepresentation |

COME NOW, plaintiff complaining of defendants as follows:

## I. PARTIES, JURISDICTION AND VENUE

1.     JILL ENGLEDOW, is and was at all times alleged herein, a citizen and resident of Wailuku, Hawaii

-1-

2. Defendant AMERICAN MEDICAL SYSTEMS, INC. (hereinafter, "AMS") is and was at all relevant times a corporation licensed to do business in California at 818 W. 7th Street, Los Angeles, CA 90017.

3. At all times alleged herein, AMS included and includes any and all parents, subsidiaries, affiliates, divisions, franchises, partners, joint venturers, and organizational units of any kind, their predecessors, successors and assigns and their officers, directors, employees, agents, representatives and any and all other persons acting on their behalf.

4. At all times alleged herein, AMS conducted regular and sustained business in California by selling and distributing its products in California, as described below. By these same activities, AMS has sufficient contacts witin the State of California to subject it to the jurisdiction of this court.

5. Upon information and belief, Defendants DOE Manufacturers One through One Hundred are manufacturers, persons, agents, servants, employees, corporations, partnership or other business entities whose true names are unknown by Plaintiff at the present time. Plaintiff alleges, upon information and belief, that DOE Manufacturers ONE through One Hundred are citizens and residents of the State of California, or are domiciled within the State of California, or conduct regular and sustained business within the State of California, to subject them to the jurisdiction of this Court. Each of these Defendants negligently assisted the named Defendants in carrying out the allegations as set forth below. Alternatively, DOE Manufacturers One through One Hundred were agents and/or servants of one or more named defendants, were acting within the course and scope of their employment and/or agency at the times alleged herein. If and when the true identities of such persons, servants, employees, corporations, partnership or other business entities are known to Plaintiff, they will seek leave of Court to amend the Complaint to reflect such true names, together with appropriate charging allegations.

6. At all times alleged herein, reference to any named Defendant, or use of the collective term "Defendants", includes the named Defendant and Defendants DOE Manufacturers ONE through one hundred, or all named Defendants herein and Defendants DOE Manufacturers ONE through one hundred, respectively.

[CORRRECTED] FIRST AMENDED COMPLAINT FOR DAMAGES

7.    At all times alleged herein, Defendants identified herein as, or discovered to be, corporations or other business entities were acting by and through officers, employees, agents, and contractors, who were acting within the course and scope of said office, employment, agency, or contractual authority.

## II.  DEFENDANTS' PELVIC MESH PRODUCTS

8.  American Medical Systems, Inc. (hereinafter AMS) designed, researched, developed, manufactured, tested, marketed, advertised, promoted, distributed, and sold mesh products, the implanted synthetic surgical mesh devices purported to correct and restore normal vaginal structure secondary to pelvic organ prolapse.

9.   The American Medical Solutions-Apogee™ System with IntePro™ is a Polypropylene mesh manufactured, designed, and distributed by Defendant American Medical Systems, Inc., designed to treat stress urinary incontinence and for vaginal vault prolapse repair.

10. Hereafter, Defendant American Medical System, Inc.'s American Medical Solutions-Apogee™ System with IntePro™ will be referred to as "Defendant's Pelvic Mesh Product" or "the Product," or "Mesh Device"

## III.    FACTUAL BACKGROUND

11.    Defendants' Pelvic Mesh Product has been and continues to be marketed to the medical community and to patients as a safe, effective, reliable, medical device; implanted by a safe and effective, minimally invasive surgical technique for the treatment of medical conditions, primarily pelvic organ prolapse and stress urinary incontinence, and as a safer and more effective as compared to the traditional products and procedures for treatment, and other competing pelvic mesh products.

12.    The Defendants have marketed and sold the Pelvic Mesh Product to the medical community at large and marketed it to patients directly through carefully planned, multifaceted marketing campaigns and strategies.  These campaigns and strategies include, but are not limited to, aggressive marketing to health care providers at medical conferences, hospitals, private offices, and include the provision of valuable cash

-3-

and non-cash benefits to health care providers. Also utilized are documents, brochures, and websites, offering exaggerated and misleading expectations as to the safety and utility of the product.

13. Contrary to the Defendants' representations and marketing to the medical community and to the patients themselves, the Defendants' Pelvic Mesh Product has a high failure, injury, and complication rates, fails to perform as intended, require frequent and often debilitating re-operations, and has caused severe and irreversible injuries, conditions, and damage to a significant number of women, including the Plaintiff.

14. The injuries, conditions, and complications suffered by women who have been implanted with Defendants' Pelvic Mesh Product include but are not limited to mesh erosion, mesh contraction, infection, fistula, inflammation, scar tissue, organ perforation, dyspareunia, blood loss, neuropathic and other acute and chronic nerve damage and pain, pudendal nerve damage, pelvic floor damage, chronic pelvic pain, urinary and fecal incontinence, prolapse of organs, and in many cases the women have been forced to undergo intensive medical treatment, including but not limited to operations to locate and remove mesh, operations to attempt to repair pelvic organs, tissue, and nerve damage, the use of pain control and other medications, injections into various areas of the pelvis, spine, and the vagina, and operations to remove portions of the female genitalia.

15. Numerous studies in the medical and scientific literature identify these injuries, complications, and failure rates for pelvic mesh products, including Defendants, to be well in excess of 15% of the implanted population. These studies document injuries from the pelvic mesh products themselves, distinct from any injuries that may have been caused by the incorrect placement of the devices.

16. The relevant medical and scientific literature also demonstrates that more than half of all women experiencing injuries from pelvic mesh, including Defendants', required surgery to correct the problem, without evidence demonstrating the an ideal method of treating these issues.

-4-

[CORRRECTED] FIRST AMENDED COMPLAINT FOR DAMAGES

17.     Alarmingly, as late as November 2007, the Society of Gynecologic Surgeons had found no studies confirming the increased efficacy in the use of pelvic mesh products in the apical or posterior compartment of the vagina.  Moreover, the Society had located only a single study supporting the proposition that pelvic mesh products had any increase in efficacy in the anterior compartment.

18.     The Defendants have consistently underreported and withheld information about the propensity of Defendants' Pelvic Mesh Products to fail and cause injury and complications, and have misrepresented the efficacy and safety of the Products, through various means and media, actively and intentionally misleading the FDA, the medical community, patients, and the public at large.

19.     Despite the chronic underreporting of adverse events associated with the Defendants' Pelvic Mesh Products and the underreporting of events associated with similarly designed competitor products, enough complaints were recorded for the FDA to issue a public health notification regarding the dangers of these devices.

20.     October 20, 2008, the Food and Drug Administration ("FDA") issued a Public Health Notification that described over 1,000 complaints (otherwise known as "adverse events") that had been reported over a three year period relating to pelvic mesh products.  Although the FDA notice did not identify the transvaginal mesh manufacturers by name, a review of the  FDA's MAUDE database indicates that the Defendant, American Medical Systems, Inc., is one of the manufacturers of the products that is the subject of the notification.

21. July 13, 2011, the FDA issued an updated safety communication warning health care providers and patients that surgical placement of mesh through the vagina to repair pelvic organ prolapse may expose patients to greater risk than other surgical options.  The safety communication also says that with the exposure to greater risk comes no evidence of greater clinical benefit such as improved quality of life.

[CORRRECTED] FIRST AMENDED COMPLAINT FOR DAMAGES

Furthermore, the FDA informed patients that serious complications associated with surgical mesh for transvaginal repair of POP are not rare.

22.     Defendants misrepresented to the medical and healthcare community, Plaintiffs, the FDA, and the public that the Products had been tested and were found to be safe and effective for the purposes of treating incontinence and/or prolapse.

23.     These representations were made by Defendants with the intent of inducing the medical community, Plaintiff, and the public, to recommend, prescribe, dispense, and purchase the Products for use as a means of treatment for stress urinary incontinence and/or prolapse, all of which evinced an indifference to the health, safety, and welfare of Plaintiff.

24.     In representations to Plaintiff and/or to Plaintiff's healthcare providers, Defendants concealed and omitted the following material information:

a.     That the Product was not as safe as other products and procedures available to treat incontinence and/or prolapse;

b.     That the risk of adverse events with the Product was higher than with other products and procedures available to treat incontinence and/or prolapse;

c.     The Product was not adequately (if at all) tested and the risk of adverse events with the device was not known by Defendants;

d.     That the limited clinical testing revealed the Product had a higher risk of adverse effects, in addition to, and above and beyond those associated with other products and procedures available to treat incontinence and/or prolapse;

e.     That Defendants failed to follow up on the adverse results from clinical studies and buried and/or misrepresented those findings;

-6-

[CORRRECTED] FIRST AMENDED COMPLAINT FOR DAMAGES

f.      That Defendants were aware of dangers in the Pelvic Mesh Product in addition to and above and beyond those associated with other products and procedures available to treat incontinence and/or prolapse;

g.      That the Pelvic Mesh Product was dangerous and caused adverse side effects, including but not limited to higher incidence of erosion and failure, at a much more significant rate than other products and procedures available to treat incontinence and/or prolapse;

h.      That mounting evidence exists demonstrating cellular reactions to polypropylene pelvic mesh, like that found in Defendants' Pelvic Mesh Product, that would trigger graft-versus-host reactions in some percentage of individuals. As a result some individuals may not be candidates for receiving this implant.

h.      That patients needed to be monitored more regularly than usual while using the Product and that in the event the product needed to be removed that the procedure to remove them had a very high failure rate and/or needed to be performed repeatedly; and

i.      That Defendants Pelvic Mesh Product was not appropriate for specific categories of women suffering from prolapse and incontinence including, but not limited to smokers, individuals with high BMI, individuals undergoing estrogen treatment, and individuals undergoing concomitant hysterectomy.

25.     Defendants have known and continue to know that some of the predicate products for the Pelvic Mesh Product had high failure and complication rates, resulting in the recall of some of these predicate devices; that there were and are differences between the defendants' Pelvic Mesh Product and some or all of the predicate products, rendering them unsuitable for designation as predicate products; that significant differences exist and existed between the Pelvic Mesh Product and its predecessor and predicate products, such that the disclosures to the FDA were and are incomplete and misleading; and that the Pelvic Mesh Product was and is causing numerous patients severe injuries and complications. The Defendants suppressed this information, and failed to accurately and completely disseminate or share this and other critical information with the FDA, health care providers, or the patients. As a result, the defendants actively and intentionally misled and continue to mislead the public, including the medical community, health care

-7-

[CORRRECTED] FIRST AMENDED COMPLAINT FOR DAMAGES

providers and patients, into believing that the Pelvic Mesh Product and the procedure for implantation were and are safe and effective, leading to the prescription for and implantation of the Pelvic Mesh Product into the Plaintiffs.

26.    As a result of Defendants' research and testing, or lack thereof, Defendants distributed false information, including but not limited to assuring Plaintiff, the public, and Plaintiff's healthcare providers and physicians, that the Products were safe for use as a means of providing relief from stress urinary incontinence and/or prolapse and were as safe or safer than other products and/or procedures available and on the market.  As a result of Defendants' research and testing, or lack thereof, Defendants intentionally concealed and suppressed certain results of testing and research to healthcare professionals, Plaintiff, and the public at large.

27.    In reliance upon these false representations, Plaintiff was induced to, and did agree to be implanted with Defendant's Pelvic Mesh Product, thereby sustaining severe and permanent personal injuries and damages. Defendants knew or had reason to know that Plaintiff and her physicians and other healthcare providers had no way to determine the truth behind Defendants' concealment and omissions, and that these included material omissions of facts surrounding dangerous nature of their products.

28.    At all times material to this action, Defendants' Pelvic Mesh Device was implanted and used in a manner foreseeable to the Defendants, as evidenced by the fact that the instructions for use were written by Defendants, the procedures for implant were designed by Defendants, and Plaintiff's implanting physician was provided training by the Defendants.

## IV.    PLAINTIFF'S EXPERIENCE AND INJURIES

29.    Plaintiff, Jill Engledow, was diagnosed with stress urinary incontinence and vaginal vault prolapse.

30.    For treatment of these conditions, Plaintiff was implanted with the American Medical Solutions-Apogee™ System with IntePro™ Ref #72404212, Lot #428952028 and Perigee™ System with

-8-

IntePro ™ Ref #72404210, Lot #428966004, Defendants' Pelvic Mesh Device, on November 17, 2005, at Kapi 'Dlani Medical Center, in Kapi'Dlani, Hawaii, by Dr. Lyric Santiago.

31. As a result of the Defendants' Pelvic Mesh Product, Plaintiff began experiencing recurrent pelvic pain, erosions, and recurrent infection of the tissue around the mesh

32. In June, 2009, Plaintiff was forced to undergo surgery to remove the mesh, as well as revisionary surgery, and vaginal reconstruction to correct the injuries caused by the mesh.

33. Due to the acts of all Defendants individually or in concert, the information regarding the nature and/or the facts leading up to and/or causing the injuries alleged herein was not known by Plaintiff nor reasonably could have been known prior to plaintiff's mesh removal.

34. As a result of the injuries Plaintiff has sustained because of Defendants' Pelvic Mesh Device, Plaintiff has suffered and continues to suffer from chronic physical pain and severe emotional injuries.

## FIRST CAUSE OF ACTION

### [ Strict Products Liability – Failure to Warn]

35. Plaintiffs hereby incorporate by reference, as if fully set forth herein, each and every allegation contained in the preceding paragraphs.

36. In the course of their business, Defendant, American Medical Systems, designed, manufactured and sold the American Medical Solutions-Apogee™ System with IntePro™ and Perigee™ System with IntePro ™ to hospitals. Due to defects in design, manufacturing and warning, the Defendants' Pelvic Mesh Device was unreasonably dangerous at the time it left Defendants' control, making its sale and distribution a violation of FDA protocol.

37. At the time of the design, manufacture and sale of Defendants' Pelvic Mesh Device, and more specifically at the time Ms. Engledow was implanted with the Product, it was defective when put to its intended and reasonably anticipated use.

38. Defendants' Pelvic Mesh Device was not accompanied by proper warnings regarding the significant adverse consequences associated with it. Specifically, Defendants did not provide sufficient or adequate warnings regarding, among other subjects: the Product's propensity to erode, the rate and manner of mesh

-9-

[CORRRECTED] FIRST AMENDED COMPLAINT FOR DAMAGES

erosion, the risk of chronic infections resulting from implantation of the Product, the risk of vaginal scarring as a result of implantation of the Product, the risk of recurrent severe pelvic pain and other pain, resulting from the implantation of the Product, and the overall severity of complications that could arise as a result of implantation of the Product.

39. In addition, the Defendants failed to adequately and sufficiently warn Ms. Engledow or other foreseeable users of Defendants' Pelvic Mesh Device regarding the above-described defects. Defendants, furthermore, failed to adequately and sufficiently warn Ms. Engledow's healthcare providers of the above-described defects; and

40. Defendants failed to provide reasonable warnings, labels or instructions of the dangerous propensities that were known or reasonably knowable at the time of distribution of the Product.

41. In sum, the reasonably foreseeable use of Defendants' Pelvic Mesh Device involved significant dangers not readily obvious to the ordinary user of the product. Defendants failed to warn of the known or knowable injuries associated with the Product, including but not limited to the Product's propensity to erode internal bodily tissues.

42. At the time Ms. Engledow had her surgery, Defendants' Pelvic Mesh Device was in the same condition as when manufactured, distributed and sold.

43. Ms. Engledow did not know at the time of use of Defendants' Pelvic Mesh Device, or at any time prior thereto, of the existence of the defects in it.

44. Ms. Engledow suffered the aforementioned injuries and damages as a direct result of American Medical Systems' failure to warn and willful disregard for the Plaintiff's safety.

45. In doing the acts herein described, the Defendants, and each of them, acted with oppression, fraud and malice, and Plaintiff is therefore entitled to punitive damages to deter the Defendants, and each of them, and others from engaging in similar conduct in the future. Said wrongful conduct was done with advance knowledge, authorization and/or ratification of an officer, director and/or managing agent of the Defendants.

-10-

[CORRRECTED] FIRST AMENDED COMPLAINT FOR DAMAGES

WHEREFORE, Plaintiff prays for judgment against Defendants as hereinafter set forth.

## SECOND CAUSE OF ACTION

### [Strict Liability]

46. Plaintiff hereby incorporates by reference, as if fully set forth herein, each and every allegation continued in the preceding paragraphs.

47. Defendants' Pelvic Mesh Product was manufactured and/or supplied by the Defendants, and each of them, and was placed into the stream of commerce by these Defendants, and each of them, in a defective and unreasonably dangerous condition in that the foreseeable risks exceeded the benefits associated with their design or formulation.

48. Alternatively, the Defendants' Pelvic Mesh Product manufactured and/or supplied by the Defendants, and each of them, was defective in design or formulation, inadequate warning or instruction and/or inadequate post-marketing warnings or instructions in that when they were placed into the stream of commerce, they were unreasonably dangerous; they were more dangerous than an ordinary consumer would expect and more dangerous than other forms of pelvic organ prolapse, rectocele, enterocele and stress urinary incontinence repair/correction. As a result of the defective unreasonably dangerous condition of the Defendants' Pelvic Mesh Product manufactured and/or supplied by the Defendants, and each of them, Plaintiff was caused to suffer the herein described injuries and damages.

49. Defendants, and each of them, acted with conscious and deliberate disregard of the foreseeable harm caused by Defendants' Pelvic Mesh Product.

50. The Defendants, and each of them, thereby acted with fraud, malice, oppression and a conscious disregard for the Plaintiff and the general public's safety, who accordingly request that the trier of fact, in the exercise of sound discretion, award additional damages for the sake of example and for the purpose of punishing the Defendants, and each of them, for their conduct, in am amount sufficiently large to be an example to others and to deter the Defendants, and each of them, and others from engaging gin similar conduct in the future. The aforesaid wrongful conduct was done with the advance knowledge, authorization, and/or ratification of an officer, director, and/or managing agents of the Defendants.

WHEREFORE, Plaintiff prays for judgment against Defendants as hereinafter set forth.

[CORRRECTED] FIRST AMENDED COMPLAINT FOR DAMAGES

# THIRD CAUSE OF ACTION

## [ Negligence ]

51. Plaintiff hereby incorporates by reference, as if fully set forth herein, each and every allegation contained in the preceding paragraphs.

52. Defendants are designers, manufacturers, and/or sellers of transvaginal mesh products, including the American Medical Solutions-Apogee™ System with IntePro™ and Perigee™ System with IntePro ™, which were designed to be implanted in women suffering from, among other conditions, vaginal vault prolapse, and stress urinary incontinence. As designers, manufacturers, and/or seller of such medical devices, Defendants had a duty to design, manufacture and sell devices that were safe and would not cause harm to foreseeable users, including Ms. Engledow.

53. Defendants had a further duty to provide instructions concerning the proper use of Defendants' Pelvic Mesh Product as well as warnings of the risks and dangers associated with using Defendants' Pelvic Mesh Product.

54. At the time that Defendants' Pelvic Mesh Product was designed, manufactured, and sold by Defendants, Defendants breached the aforementioned duties by:

a. Failing to design the Product so as to avoid an unreasonable risk of harm to women who had the product implanted in them;

b. Failing to manufacture Product so as to avoid an unreasonable risk of harm to women who had the product implanted in them;

c. Failing to use reasonable care in the testing of the Product so as to avoid an unreasonable risk of harm to women who had the product implanted in them;

d. Failing to use reasonable care in inspecting the Product so as to avoid an unreasonable risk of harm to women who had the product implanted in them;

e. Failing to provide adequate warnings regarding, among other subjects, the Product's propensity to erode, the rate and manner of mesh erosion, the risk of chronic infections resulting from implantation of the Defendants' Pelvic Mesh Product, the risk of vaginal scarring as a result of implantation of the product, the

[CORRRECTED] FIRST AMENDED COMPLAINT FOR DAMAGES

risk of recurrent severe pelvic pain and other pain resulting from the implantation of the product, and the overall severity of complications that could arise as a result of implantation of the Product;

f. Failing to adequately and sufficiently warn Ms. Engledow and other foreseeable recipients of these implants of the hazards associated with Defendants' Pelvic Mesh Product.

g. Failing to adequately and sufficiently warn Ms. Engledow's healthcare providers of the above-described defects; and

h. Otherwise negligently or carelessly designing and/or manufacturing Defendants Mesh Product. Ms. Engledow's injures and damages are a direct and proximate result of Defendants' negligence, gross negligence, and willful disregard for the safety of the Plaintiff.

55. The Defendants, and each of them, so negligently and carelessly manufactured, compounded, tested, failed to test, inspected, failed to inspect, packaged, labeled, distributed, recommended, displayed, sold, examined, and failed to examine and supplied the aforesaid products as described above, that there were dangerous and unsafe for the use and purpose for which they were intended, that is, repairing/correcting pelvic organ prolapse, rectocele, enterocele and stress urinary incontinence, in Plaintiff and others similarly situated. As a result of the carelessness and negligence of the Defendants, Plaintiff had the Defendants' Pelvic Mesh Device implanted in the manner intended by the manufacturer, and, as a result, Plaintiff suffered the injuries and damages described herein.

WHEREFORE, Plaintiff prays for judgment against Defendants as hereinafter set forth.

### FOURTH CAUSE OF ACTON

### [ Breach of Express Warranty ]

56. Plaintiffs hereby incorporate by reference, as if fully set forth herein, each and every allegation contained in the preceding paragraphs.

57. Through their use of aggressive marketing campaigns directed at health care providers and direct to patient advertising at medical conferences, hospitals, private offices, the provision of valuable cash and non-cash benefits to health care providers, brochures, and websites, offering exaggerated and misleading

-13-

expectations as to the safety and utility of the Defendants' Pelvic Mesh Device, Defendants expressly warranted that the American Medical Solutions-Apogee™ System with IntePro™ and Perigee™ System with IntePro ™ was safe and fit for the purpose of treating stress urinary incontinence when implanted in Ms. Engledow and used under ordinary circumstances and in an ordinary manner.

58.    Due to defects in design, manufacturing and warning, Defendants' Pelvic Mesh Device was unreasonably dangerous at the time that it left Defendants' control. In particular, Defendants' Pelvic Mesh Device had a propensity to cause the injuries described above at rates far exceeding industry and regulatory norms, while claiming the sales and packaging information on the product advertised them as safe and efficacious for its designed use.

59.    For the above reasons, Defendants knew or should have known that the Product was not of merchantable quality when sold and then implanted into Ms. Engledow. Specifically, Defendants should have known that the Product was not fit for treating incontinence or vagina vault prolapse.

60.    Ms. Engledow, her physicians and health care providers reasonably relied on Defendants' judgment, indications and statements made in their marketing campaigns directed at health care providers and direct to patient advertising at medical conferences, hospitals, private offices, the provision of valuable cash and non-cash benefits to health care providers, brochures, and websites, that the Product was fit for the use that it was intended.

61.    Because of its propensity to cause harm and lack of warnings regarding its rate of adverse events, Defendants' Pelvic Mesh Device was not of merchantable quality or suited for its intended use as warranted, and, as such, Defendants are liable to the Plaintiff for her injuries sustained as a result of Defendants' Pelvic Mesh Device. Ms. Engledow's injures and damages are a direct and proximate result of American Medical System's negligence, gross negligence, and willful disregard for the Plaintiff's safety.

WHEREFORE, Plaintiff prays for judgment against Defendants as hereinafter set forth.

## FIFTH CAUSE OF ACTION

-14-

[CORRRECTED] FIRST AMENDED COMPLAINT FOR DAMAGES

**[ FRAUD]**

62. Plaintiff hereby incorporates by reference, as if fully set forth herein, each and every allegation contained in the preceding paragraphs.

63. The Defendants, and each of them, falsely and fraudulently represented to Plaintiff, her physicians, and to members of the general public that the aforesaid products were safe, effective, reliable, consistent, and better than the other similar pelvic repair procedures when used in the manner intended by the manufacturer. The representations by said Defendants, and each of them, were in fact, false. The true facts include, but are not limited to, that the aforesaid products were not safe to be used for repairing/correcting pelvic organ prolapse, rectocele, enterocele and stress urinary incontinence, and were, in fact, dangerous to the health and body of Plaintiff.

64. When the Defendants, and each of them, made these representations, they knew that they were false. The Defendants, and each of them, made said representations with the intent to defraud and deceive Plaintiff, and with the intent to induce Plaintiff to act in the manner herein alleged, that is to use the aforementioned products for repairing/correcting pelvic organ prolapse, rectocele, enterocele and stress urinary incontinence.

65. In doing the acts herein alleged, the Defendants, and each of them, acted with oppression, fraud, and malice, and Plaintiff are, therefore, entitled to punitive damages to deter the Defendants, and each of them, and others form engaging in similar conduct in the future. Said wrongful conduct was done with advance knowledge, authorization and/or ratification of an officer, director, and/or managing agent of Defendants.

WHEREFORE, Plaintiff prays for judgment against Defendants as hereinafter set forth.

**SIXTH CAUSE OF ACTION**

**[ Fraud by Concealment ]**

66. Plaintiff hereby incorporates by reference, as if fully set forth herein, each and every allegation contained in the preceding paragraphs.

67. At all times mentioned herein, the Defendants, and each of them, had the duty and obligation to disclose to Plaintiff and to her physicians, the true facts concerning the Mesh Device; that is, that said products were dangerous and defective, lacking efficacy for their purported use and lacking safety in normal

-15-

use, and how likely there were to cause serious consequences to users including permanent and debilitating injuries. The Defendants, and each of them, made the affirmative representations as set forth above to Plaintiff, her physicians, and the general public prior to the date the Mesh Device was implanted in Plaintiff, while concealing material facts.

68. At all times herein mentioned, the Defendants, and each of them, willfully, and maliciously concealed facts as set forth above from Plaintiff and her physicians with the intent to defraud.

69. At all times herein mentioned, neither Plaintiff nor her physicians were aware of the facts set forth above, and had they been aware of said facts, they would not have acted as they did, that is, would not reasonably relied upon said representation of safety and efficacy and utilized the Mesh Device for repairing/correcting pelvic organ prolapse, rectocele, enterocele, and stress urinary incontinence.

70. As a result of the concealment of the facts set forth above, Plaintiff sustained injuries as hereinafter set forth.

WHEREFORE, Plaintiff prays for judgment against Defendants as hereinafter set forth.

### SEVENTH CAUSE OF ACTION

### [ Negligent Misrepresentation ]

71. Plaintiff hereby incorporates by reference, as if fully set forth herein, each and every allegation contained in the pending paragraphs.

72. At all relevant times herein, the Defendants, and each of them, represented to Plaintiff and her physicians that the Mesh Device was safe to use for repairing/correcting pelvic organ prolapse, rectocele, enterocele and stress urinary incontinence, knowing that the Mesh Device was defective and capable of causing the injuries described herein.

73. The Defendants, and each of them, made the aforesaid representations with no reasonable ground for believing them to be true when the data readily available to Defendants, and upon information and belief directly available to Defendants in the form of adverse even reports specifically related to the Mesh Device showed the Mesh Device to be defective and dangerous when used in the intended manner.

74. The aforesaid representation were made to the physicians prescribing the Mesh Device prior to the date they were prescribed to Plaintiff with the intent that Plaintiff and her physicians rely upon such misrepresentations about the safety and efficacy of the Mesh Device. Plaintiff and her physicians did

-16-

[CORRRECTED] FIRST AMENDED COMPLAINT FOR DAMAGES

reasonably rely upon such representations that the aforesaid product was safe for use for repairing/correcting pelvic organ prolapse, rectocele, enterocele and stree urinary incontinence.

75. The representations by the Defendants, and each of them, to Plaintiff, were false and thereby caused Plaintiff injuries described herein.

WHEREFORE, Plaintiff prays for judgment against Defendants as hereinafter set forth.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment against the Defendants on each of the above-referenced claims and Causes of Action and as follows:

a.   Awarding compensatory damages to Plaintiff for past and future damages, including but not limited to pain and suffering for severe and permanent personal injuries sustained by the Plaintiff, health care costs, medical monitoring, together with interest and costs as provided by law;

b.  For lost wages and loss of earning capacity in an amount to be proven at time of trial together with interest thereon at the highest lawful rate from the date of judgment until paid in full;

c.  For imposition of a constructive trust and restitution;

d.  For punitive or exemplary and/or exemplary damages for the wanton, willful, fraudulent, reckless acts of the Defendants who demonstrated a complete disregard and reckless indifference for the safety and welfare of the general public and to the Plaintiff in an amount sufficient to punish Defendants and deter future similar conduct;

e.  For any other causes of action and/or claims as may be compensable under local laws and/or statutes as may apply under the laws in the jurisdiction and venue in which this case will be transferred for trial'

f.  For Plaintiff's reasonable attorneys' fees;

g.  For Plaintiff's costs incurred herein together with interest thereon at the highest lawful rate from the date of judgment until paid in full; and

//

//

//

//

-17-

h. For such other relief as the Court deems just and proper.

Dated: October 27, 2011

Girardi & Keese

By: _____

Thomas V. Girardi
Amy Fisch Solomon
Amanda Kent

Attorneys for Plaintiff

[CORRRECTED] FIRST AMENDED COMPLAINT FOR DAMAGES

**DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury on all issues so triable.

Dated:  October 28, 2011

Girardi & Keese

By: _____

Thomas V. Girardi
Amy Fisch Solomon
Amanda Kent

Attorneys for Plaintiff

[CORRRECTED] FIRST AMENDED COMPLAINT FOR DAMAGES