CLOSED, SPECIAL

# United States District Court
# Eastern District of Pennsylvania (Philadelphia)
# CIVIL DOCKET FOR CASE #: 2:11−cv−07131−AB

MITCHELL v. ENDO PHARMACEUTICALS
Assigned to: HONORABLE ANITA B. BRODY
related Case: 2:11−cv−06651−AB
Cause: 28:1332 Diversity−Product Liability

Date Filed: 11/15/2011
Date Terminated: 11/17/2011
Jury Demand: None
Nature of Suit: 365 Personal Inj. Prod. Liability
Jurisdiction: Diversity

**Plaintiff**

**KACI MITCHELL**

represented by **ROSEMARY PINTO**
FELDMAN &PINTO PC
1604 LOCUST ST., 2R
PHILADELPHIA, PA 19103
215−546−2604
Email: rpinto@feldmanpinto.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**ENDO PHARMACEUTICALS**

represented by **LOUIS W. SCHACK**
REED SMITH LLP
2500 ONE LIBERTY PL
1650 MARKET ST
PHILADELPHIA, PA 19103−7301
215−851−8100
Fax: 215−851−1420
Email: lschack@reedsmith.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 11/15/2011 | 1 | NOTICE OF REMOVAL by ENDO PHARMACEUTICALS from Court of Common Pleas of Philadelphia County, case number 111002259; with Certificate of Service. (Filing fee $ 350 receipt number 053216) (Attachments: # 1 Exhibit A, # 2 Exhibit B part 1 of 2, # 3 Exhibit B part 2 of 2, # 4 Civil Cover Sheet)(mima, ) (Entered: 11/15/2011) |
| 11/15/2011 | 2 | Disclosure Statement Form pursuant to FRCP 7.1 including American Medical Systems, Inc., Endo Pharmacueticals Holdings Inc. by ENDO PHARMACEUTICALS.(mima, ) (Entered: 11/15/2011) |
| 11/17/2011 | 3 | Praecipe *to Withdraw Notice of Removal with Certificate of Service* by ENDO PHARMACEUTICALS. (SCHACK, LOUIS) (Entered: 11/17/2011) |

Rosemary Pinto, Esq.
Pa. Bar No. 53114
RPinto@feldmanpinto.com
**FELDMAN & PINTO**
1604 Locus St, FL 2R
Philadelphia, PA 19103
Telephone: 215- 546-4385

Scott A. Love, Esq.
Pa. Bar No. 205329
slove@triallawfirm.com
Clayton A. Clark, Esq.
cclark@triallawfirm.com
**CLARK, BURNETT, LOVE & LEE, GP**
440 Louisiana, 16th Floor
Houston, TX 77002
(713) 757-1400 Telephone
(713) 759-1217 Facsimile
**Attorneys for Plaintiff**

Filed and Attested by PROTHONOTARY 18 OCT 2011 03:11 pm

**This is Not An Arbitration Case. An Assessment of Damages Is Required**

| | |
|---|---|
| **KACI MITCHELL**<br>**8640 Booth Road**<br>**Klamath Falls, OR 97603** | **COURT OF COMMON PLEAS**<br>**PHILADELPHIA COUNTY** |
| | **____ TERM 2011** |
| **Vs.** | **NO. _______________** |
| | **COMPLAINT** |
| **ENDO PHARMACEUTICALS**<br>**100 Endo Boulevard**<br>**Chadds Ford, Pennsylvania 19317** | **JURY TRIAL DEMANDED** |

**NOTICE TO PLEAD**

NOTICE

You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so *the* case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW. THIS OFFICE CAN PROVIDE YOU WITH INFORMATION ABOUT HIRING A LAWYER. ,

IF YOU CANNOT AFFORD TO HIRE A LAWYER, THIS OFFICE MAY BE ABLE TO PROVIDE YOU WITH INFORMATION ABOUT AGENCIES THAT MAY OFFER LEGAL SERVICES TO ELIGIBLE PERSONS AT A REDUCED FEE OR NO FEE.

Lawyer Referral Service
Philadelphia Bar Association 1101
Market Street, 11th Floor
Philadelphia, PA 19107
(215) 238-6338

ADVISO

Le han demandado a used en la corte. Si usted quiere defenderse de estas - – demandas expuestas en as paginas siguientes, usted tiene veinte (20) digs de plazo al partir de la fecha de la demanda y la notificacion. Hace falta asentar una comparencia escrita o en persona o con un abogado y entregar a la corte en forma escrita sus defenses o sus objeciones a las demandas en contra de su persona. Sea avisado que si usted no se defiende, la corte tomara medidas y puede continuer ls demanda en contra suya sin previo aviso o notificacion. Ademas, la corte pueda decidir a favor del demandante y requiere que usted cumpla con todas las provisiones de esta demanda. Usted puede perder dinero o sus propiedades u otros derechos importantes para usted.

LLEVE ESTA DEMANDA A UN ABOGADO INMEDIATAMENTE, SI NO TIENE ABOGADO 0 SI NO TIENE EL DINERO SUFICIENTE DE PAGAR TAL SERVICIO, VAYA EN PERSONA 0 LLAME POR TELEFONO A LA OFICINA CUYA DIRECCION SE ENCUENTRA ESCRITA ABAJO PARA AVERIGUAR DONDE SE PUEDE CONSEGUIR ASISTENCIA LEGAL.

ESTA OFICINA LO PUEDE PROPORCIONAR CON INFORMACION ACERCA DE EMPLEAR A UN ABOGADO. SI USTED NO PUEDE PROPORCIONAR PARA EMPLEAR UN ABOGADO, ESTA OFICINA PUEDE SER CAPAZ DE PROPORCIONARLO CON INFORMACION ACERCA DE LAS AGENCIAS QUE PUEDEN OFRECER LOS SERVICOS LEGALES A PERSONAS ELEGIBLES EN UN HONORARIO REDUCIDO NINGUN HONORARIO.

Lawyer Referral Service
Philadelphia Bar Association
1101 Market Street, 11th Floor
Philadelphia, PA 19107
(215) 238-6338

## COMPLAINT AND FOR JURY TRIAL

1. Plaintiff herewith requests a trial by jury as to all issues to all material facts.

## PARTIES

2. Plaintiff KACI MITCHELL ("Plaintiff') is, and was, at all relevant times, a resident of Klamath Falls, Oregon.

3. Defendant Endo Pharmaceuticals (ENDO) is a Pennsylvania corporation, with its principal place of business at 100 Endo Boulevard, Chadds Ford, Pennsylvania 19317.

## JURISDICTION AND VENUE

4. At all relevant times, Defendant ENDO merged with American Medical Systems (AMS), the manufacturer of defective synthetic mesh systems used for both pelvic organ prolapsed (POP) and stress urinary incontinence (SUI), and, as part of the acquisition of said manufacturer's complete line of urogynecological medical devices, purchased and assumed all liability relating to legal claims arising from the implantation of the synthetic mesh systems.

5. Plaintiff was implanted with a product designed, manufactured and sold in interstate commerce (including Pennsylvania and Oregon) the synthetic mesh system ("subject synthetic mesh system"). ENDO has its principal place of business in Pennsylvania, and does substantial business in the Commonwealth of Philadelphia, and receives substantial compensation and profits from sales of the subject synthetic mesh system in said Commonwealth.

6. ENDO has significant contacts with the Commonwealth such that they are subject to personal jurisdiction within said Commonwealth.

7. Plaintiff is seeking damages within the jurisdiction of this Court.

Case 2:11-cv-07131-AB Document 1-1 Filed 11/15/11 Page 5 of 28

## FACTUAL ALLEGATIONS

8. American Medical Systems developed technology to diagnose and treat conditions related to the pelvic health of both men and women. American Medical Systems manufactured, marketed, advertised, promoted and sold synthetic mesh systems worldwide including the system implanted in Plaintiff.

9. On April 11, 2011, ENDO issued a press release announcing its agreement to acquire AMS, Dave Holveck, President and Chief Executive Officer of Endo, said:

> This acquisition is a great step in achieving Endo's core strategy. We are creating a company uniquely positioned to respond to the changing healthcare environment and the competitive, rapidly consolidating industry landscape. Through the acquisition of AMS, we will gain scale in devices and services, and will be positioned as a leading provider of healthcare solutions in the field of pelvic health, with a full spectrum of product offerings ranging from pharmaceuticals to medical devices.

10. Under the terms of the merger agreement, which was approved by the Boards of Directors of both companies, Endo acquire 100 percent of the shares of AMS for $30.00 per share or a total cash consideration of $2.9 billion in cash, which includes the assumption and repayment of $312 million of AMS debt.

11. On June 17, 2011, Endo completed the acquisition of AMS for approximately $2.4 billion in aggregate consideration, including $2.3 billion in cash paid for equity, $71.6 million related to existing AMS stock-based compensation awards and certain other amounts, at which time AMS became a wholly-owned subsidiary of ENDO. AMS's shares were purchased at a price of $30.00 per share. The acquisition has been accounted for as a business combination (in accordance with ASC 805 Business Combinations) and, as such, the AMS assets acquired and liabilities assumed have been recorded at their respective fair values. The determination of fair

value for the identifiable tangible and intangible assets acquired and liabilities assumed requires extensive use of accounting estimates and judgments.

12. In reporting the completion of the acquisition of AMS, ENDO provided an Unaudited Pro Forma Condensed Combined Financial Statement which makes clear that ENDO purchased all of AMS's liabilities including all that may be related to products liability claims. The following representation in pertinent part was made regarding the accounting of ENDO's acquisition of AMS's product liability related liabilities:

> Reflects (1) an adjustment to remove AMS's $4.4 million product liability reserve. In accordance with ASC 805, the fair value of the pre-acquisition contingency related to product liability cannot be reasonably estimated or determined.

13. On June 20, 2011, ENDO issued another press release in which it announced the completion of its acquisition of AMS. Endo announced that on April 11, 2011, it entered into a definitive agreement to acquire AMS, a leading provider of world-class devices and therapies for male and female pelvic health, for approximately $2.9 billion in cash.

14. On August 9, 2011, the Associated Press reported that Endo advised that its medical device and service revenue totaled $76.3 million, of which $26.8 million came from American Medical Systems.

15. On the same day, ENDO issued another press release stating in pertinent part: Our devices and services sales were $76.3 million for the second quarter and demonstrate our increased diversification. Revenues from our device and services segment include $26.8 million from our recent acquisition of American Medical Systems, (AMS), which furthers Endo's evolution from a product-driven company to a healthcare solutions provider. We believe that AMS strengthens Endo's core urology franchise, diversifies revenue and improves gross margin.

Case ID: 111002259

Case 2:11-cv-07131-AB Document 1-1 Filed 11/15/11 Page 7 of 28

16. ENDO's predecessor, AMS, which ENDO acquired in 2011, did design, develop, manufacture, market, advertise, promote, distribute, and sell products that are sold to and marketed to treat pelvic organ prolapsed and/or stress urinary incontinence, including the implantable synthetic mesh system which is the subject of this lawsuit. The synthetic mesh system is purported to remediate pelvic organ prolapsed or urinary incontinence by implantation of polypropylene mesh inside the pelvic region of a woman's body.

17. Plaintiff has a condition that required surgical intervention for repair. Plaintiff was implanted with the AMS BioArc mesh system in 2010. The synthetic mesh system was designed, developed, manufactured, marketed, promoted, advertised, warranted and distributed by ENDO's predecessor, AMS.

18. Within months after the initial implant procedure, Plaintiff experienced complications from the defective mesh requiring additional medical care and treatment and/or surgical intervention.

19. Between 2002 and the present, numerous reports of adverse events pertaining to the subject synthetic mesh system filed by physicians and patients. The most frequent complaints were erosion, extrusion, infection, hardening of the mesh, chronic pain and worsening symptoms. Published studies have shown a high rate of mesh erosion accompanied by worsening symptoms.

20. The 2004 World Health Organization 3r^d International Consultation on Incontinence reported mesh repairs have unacceptable high rate of complication that include erosion, extrusion, infection, sepsis, and urination. Because of the poor risk/benefit ratio of the vaginal mesh systems it was recommended the synthetic mesh systems not to be used until more approved clinical trials of outcome were conducted.

Case ID: 111002259

21. On July 13, 2011, the FDA issued a Safety Communication:"UPDATE on Serious Complications Associated with Transvaginal Placement of Surgical Mesh for Pelvic Organ Prolapse." Therein, the FDA advised that it had conducted an updated analysis of adverse events reported to the FDA and complications reported in the scientific literature and concluded that surgical mesh used in transvaginal repair of Pelvic Organ Prolapse was an area of "continuing serious concern." The FDA concluded that serious complications associated with surgical mesh for transvaginal repair of Pelvic Organ Prolapse, were not rare. These serious complications include, but are not limited to neuromuscular problems, vaginal scarring/shrinkage and emotional problems. Many of the serious complications required medical and surgical treatment and hospitalization. Moreover, the FDA concluded that it was not clear that transvaginal repair of Pelvic Organ Prolapse with mesh was more effective than traditional non mesh repair of Pelvic Organ Prolapse. The FDA conducted a systematic review of the published scientific literature from 1996-2011 and concluded that based thereon, that transvaginal Pelvic Organ Prolapse repair with mesh "does not improve symptomatic results or quality of life over traditional non mesh repair."

22. Additionally, in the July 13, 2011 Safety Communication, the FDA concluded that:

> "a mesh procedure may put the patient at risk for requiring additional surgery or for the development new complications. Removal of the mesh due to mesh complications may involve multiple surgeries and significantly impair the patient's quality of life. Complete removal of mesh may not be possible."

23. The information contained in the FDA's Safety Communication of July 13, 2011 is equally applicable to the subject synthetic mesh system and the information was known or knowable to ENDO's predecessor, AMS and was not disclosed in oral or written communications, direct to consumer advertising in the form of patient brochures, instructions for use or labeling.

Case ID: 111002259

24. At all times relevant herein, the subject synthetic mesh system was widely advertised and promoted by the ENDO's predecessor, AMS as a safe and effective treatment for pelvic organ prolapsed and/or urinary incontinence repair. ENDO's predecessor, AMS minimized the risks posed to patients with implantation of the system.

25. At all times relevant herein, ENDO's predecessor, AMS knew there was a defect and knew the defect in the subject synthetic mesh system was attributable to the erosion, shrinkage and/or hardening of the mesh material. ENDO's predecessor, AMS knew that the mesh is made to allow tissue infiltration and removal is not advised. Complications from the mesh and from mesh removal are life-changing and can be irreversible. This information was known to the ENDO's predecessor, AMS prior to implantation of the subject synthetic mesh system in Plaintiff.

26. At all times relevant to this action, ENDO's predecessor, AMS knew that the synthetic mesh systems were not safe for the patients for whom they were prescribed and implanted, because the mesh eroded and otherwise malfunctioned, and therefore failed to operate in a safe and continuous manner, causing injuries from erosion, extrusion, infection, sepsis, chronic foreign body invasion, dense adhesions and worsening symptoms. Removal of eroded or infected mesh brings a high rate of life-threatening complications including permanent disfigurement and hemorrhage. Removal can take up to three surgical interventions in the operating theater for complete removal and results in scarring on fragile compromised pelvic tissue and muscles.

27. ENDO's predecessor, AMS's representations regarding the performance of the subject synthetic mesh systems, including, but not limited to, the consistency of the performance of the subject synthetic mesh system and their safety and reliability, were untrue as set forth in

Case 2:11-cv-07131-AB Document 1-1 Filed 11/15/11 Page 10 of 28

the published literature and adverse event reports.. The ENDO's predecessor, AMS failed to disclose to physicians, patients or Plaintiff that its mesh was subject to material changes in the polypropylene and/or cause erosion or excessive scar tissue and/or fibrotic formation causing the injuries herein described.

28. At all relevant times herein, ENDO's predecessor, AMS continued to promote the subject synthetic mesh system as safe and effective even when no clinical trials had been done supporting long or short term efficacy.

29. In doing so the ENDO's predecessor, AMS concealed the known risks and failed to warn of known or scientifically knowable dangers and risks associated with the subject synthetic mesh system.

30. As of the filing of this complaint, Plaintiff is more likely than not to have continuing procedures relating to injuries suffered from the defective device.

31. At all relevant times herein, ENDO's predecessor, AMS failed to provide sufficient warnings and instructions that would have put Plaintiff and the general public on notice of the dangers and adverse effects caused by implantation of the subject synthetic mesh system including, but not limited to, mesh erosion, dense adhesions, worsening symptoms, chronic pain, infection, sepsis, permanent disfigurement and multiple surgeries for mesh removal.

32. The subject synthetic mesh system as designed, manufactured, distributed sold and/or supplied by ENDO's predecessor, AMS was defective as marketed due to inadequate warnings, instructions, labeling and/or inadequate testing in the presence of ENDO's predecessor, AMS's knowledge of lack of pelvic health safety.

33. At all times herein mentioned, the officers and/or directors of ENDO and/or ENDO's predecessor, AMS participated in, authorized and/or directed the production and promotion of the aforementioned products when they knew of the hazards and dangerous propensities of said products, and thereby actively participated in the tortuous conduct that resulted in the injuries suffered by Plaintiff.

Case 2:11-cv-07131-AB Document 1-1 Filed 11/15/11 Page 12 of 28

**FIRST CAUSE OF ACTION**
**[Strict Product Liability - Failure to Warn]**

34. Plaintiff hereby incorporates by reference, as if fully set forth herein, each and every allegation contained preceding paragraphs, inclusive, of this Complaint.

35. ENDO' s predecessor, AMS manufactured, sold and/or distributed the subject synthetic mesh system which was implanted in Plaintiff.

36. At all times mentioned herein, subject synthetic mesh system is and was, dangerous and presented a substantial danger to patients who were implanted with the subject synthetic mesh system.

37. These risks and dangers associated with the subject synthetic mesh system were known or knowable to ENDO's predecessor, AMS at the time of implantation in Plaintiff.

38. ENDO's predecessor, AMS failed to provide warnings of such risks and dangers to Plaintiff as described herein and said risks were not known or knowable to patients such as Plaintiff at the time of implantation. Ordinary consumers would not have recognized the potential risks and dangers the subject synthetic mesh system posed because its uses were specifically promoted to improve the health of such patients while the nature and prevalence of such risks were either downplayed or not provided to consumers and their physicians.

39. The subject synthetic mesh system was used in a way reasonably foreseeable to ENDO's predecessor, AMS, by Plaintiff.

40. As a result of the subject synthetic mesh system, Plaintiff suffered debilitating injuries from the synthetic mesh including mesh erosion, hardening, chronic pain and worsening urination leading to the need for dangerous and serious surgery; required and will continue to require healthcare and services; has incurred and will continue to incur medical and related

Case ID: 111002259

expenses; has suffered and will continue to suffer mental anguish, diminished capacity for the enjoyment of life, a diminished quality of life, chronic debilitating pain, and other such damages.

41. In doing the acts herein described, the ENDO's predecessor, AMS, acted with oppression, fraud and malice, and Plaintiff is therefore entitled to punitive damages to deter ENDO's predecessor, AMS, and others from engaging in similar conduct in the future. Said wrongful conduct was done with advance knowledge, authorization and/or ratification of an officer, director and/or managing agent of the ENDO's predecessor, AMS.

WHEREFORE, Plaintiff prays for judgment against ENDO's predecessor, AMS, as hereinafter set forth.

**SECOND CAUSE OF ACTION**
**[Strict Liability — Defective Design]**

42. Plaintiff hereby incorporates by reference, as if fully set forth herein, each and every allegation contained preceding paragraphs, inclusive, of this Complaint.

43. The subject synthetic mesh system was manufactured and/or supplied by the ENDO's predecessor, AMS, and was placed into the stream of commerce by ENDO's predecessor, AMS, in a defective and unreasonably dangerous condition in that the foreseeable risks exceeded the benefits associated with its design of formulation.

44. Alternatively, the subject synthetic mesh system manufactured and/or supplied by the ENDO' s predecessor, AMS, were defective in design or formulation, inadequate warning or instruction and/or inadequate post-marketing warnings or instructions in that when it was placed in the stream of commerce, it was unreasonably dangerous, it was more dangerous than an ordinary consumer would expect and more dangerous than other forms of POP or SUI repair.

Case 2:11-cv-07131-AB Document 1-1 Filed 11/15/11 Page 14 of 28

45. As a result of the defective unreasonably dangerous condition of these products manufactured and/or supplied by the ENDO's predecessor, AMS, Plaintiff was caused to suffer the herein described injuries and damages.

46. ENDO's predecessor, AMS, acted with conscious and deliberate disregard of the foreseeable harm caused by subject synthetic mesh system.

47. ENDO's predecessor, AMS, thereby acted with fraud, malice, oppression and a conscious disregard for the Plaintiff and general public's safety, who accordingly requests that the trier of fact, in the exercise' of sound discretion, award additional damages for the sake of example and for the purpose of punishing the ENDO's predecessor, AMS, for its conduct, in an amount sufficiently large to be an example to others and deter the ENDO's predecessor, AMS, and others from engaging in similar conduct in the future. The aforesaid wrongful conduct was done with the advance knowledge, authorization, and/or ratification of an officer, director, and/or managing agent of ENDO's predecessor, AMS.

WHEREFORE, Plaintiff prays for judgment against ENDO's predecessor, AMS, as hereinafter set forth.

**THIRD CAUSE OF ACTION**
**[Strict Liability — Defective Manufacture]**

48. Plaintiff hereby incorporates by reference, as if fully set forth herein, each and every allegation contained preceding paragraphs, inclusive, of this Complaint.

49. The subject synthetic mesh system implanted in Plaintiff was unreasonably dangerous and not reasonably safe for its intended use and was defective as a matter of law with respect to its manufacture.

50. As a direct and proximate result of the Products' aforementioned defects, Plaintiff was caused and/or in the future will be caused to suffer severe personal injuries, pain and

suffering, severe emotional distress, financial or economic loss, including but not limited to obligations for medical services and expenses, present and future lost wages, and other damages.

51. ENDO's predecessor, AMS, is strictly liable to Plaintiff for manufacturing, marketing, labeling, packaging and selling a defectively manufactured product.

52. ENDO's predecessor, AMS, acted with conscious and deliberate disregard of the foreseeable harm caused by subject synthetic mesh system.

53. ENDO's predecessor, AMS, thereby acted with fraud, malice, oppression and a conscious disregard for the Plaintiff and general public's safety, who accordingly requests that the trier of fact, in the exercise of sound discretion, award additional damages for the sake of example and for the purpose of punishing the ENDO's predecessor, AMS, for its conduct, in an amount sufficiently large to be an example to others and deter the ENDO's predecessor, AMS, and others from engaging in similar conduct in the future. The aforesaid wrongful conduct was done with the advance knowledge, authorization, and/or ratification of an officer, director, and/or managing agent of ENDO's predecessor, AMS.

WHEREFORE, Plaintiff prays for judgment against ENDO's predecessor, AMS, as hereinafter set forth.

## FOURTH CAUSE OF ACTION
**[Negligence]**

54. Plaintiff hereby incorporates by reference, as if fully set forth herein, each and every allegation contained preceding paragraphs, inclusive, of this Complaint.

55. ENDO's predecessor, AMS, and their representatives were manufacturers and/or distributors of subject synthetic mesh system. At all times herein, ENDO's predecessor, AMS, had a duty to properly manufacture, compound, test, inspect, package, label, distribute, market,

examine, maintain supply, provide proper warnings and prepare for use and sell the aforesaid product.

56. ENDO's predecessor, AMS, so negligently and carelessly manufactured, compounded, tested, failed to test, inspected, failed to inspect, packaged, labeled, distributed, recommended, displayed, sold, examined, failed to examine and supplied aforesaid product, that it was dangerous and unsafe for the use and purpose for which it was intended, that is, POP and/or SUI repair in Plaintiff and others similarly situated. As a result of the carelessness and negligence of ENDO's predecessor, AMS, Plaintiff had the subject synthetic mesh system implanted in the manner intended by the manufacturer, and, as a result, Plaintiff suffered the injuries and damages described herein.

WHEREFORE, Plaintiff prays for judgment against ENDO's predecessor, AMS, as hereinafter set forth.

**FIFTH CAUSE OF ACTION**
**[Negligence Per Se]**

57. Plaintiff hereby incorporates by reference, as if fully set forth herein, each and every allegation contained preceding paragraphs, inclusive, of this Complaint.

58. ENDO's predecessor, AMS, has an obligation not to violate the law in the manufacture, design, testing, assembly, inspection, labeling, packaging, supplying, marketing, selling, preparing for use, and warning of the risks and dangers of the subject synthetic mesh system it sells.

59. ENDO's predecessor's, AMS, acts constitute an adulteration, misbranding, or both, as defined by the federal Food, Drug and Cosmetic Act, 21 U.S.C. § 321 *et seq.* and parallel state Food, Drug and Cosmetic Acts and state common law. Said acts constitute a breach of duty

Case ID: 111002259

Case 2:11-cv-07131-AB Document 1-1 Filed 11/15/11 Page 17 of 28

subjecting ENDO's predecessor, AMS, to civil liability for the damages arising there from inasmuch as such acts constitute negligence per *se*.

60. Plaintiff, as patient and implantee exposed to ENDO's predecessor, AMS, synthetic mesh system, is within the class of persons the statutes and regulations described above are designed to protect, and Plaintiff's injuries are the type of harm these statutes and regulations are intended to prevent.

61. As a direct and proximate cause of ENDO's predecessor, AMS, negligent acts and/or omissions, Plaintiff suffered injuries and damages, as set forth in their individual Complaints.

WHEREFORE, Plaintiff prays for judgment against ENDO's predecessor, AMS, as hereinafter set forth.

**SIXTH CAUSE OF ACTION**
**[Breach of Implied Warranty]**

62. Plaintiff hereby incorporates by reference, as if fully set forth herein, each and every allegation contained preceding paragraphs, inclusive, of this Complaint.

63. ENDO' s predecessor, AMS, impliedly warranted that its subject synthetic mesh system, which ENDO's predecessor, AMS, designed, manufactured, assembled, promoted and sold to Plaintiff was merchantable and fit and safe for ordinary use. ENDO's predecessor, AMS, further impliedly warranted that its subject synthetic mesh system was fit for the particular purpose of POP and/or SU1 repair.

64. ENDO's predecessor's, AMS, subject synthetic mesh system were defective, unmerchantable, and unfit for ordinary use when sold, and unfit for the particular purpose for which they were sold, and subjected Plaintiff to severe and permanent injuries. Therefore, ENDO's predecessor, AMS breached the implied warranties of merchantability and fitness for a

Case ID: 111002259

particular purpose when it's synthetic mesh system was sold to Plaintiff, in that the mesh system is defective and has eroded and caused dense scarring and otherwise failed to function as represented and intended.

65. As a result of ENDO's predecessor, AMS, breach of the implied warranties of merchantability and fitness for a particular purpose, Plaintiff has sustained and will continue to sustain the injuries and damages described herein, and is therefore entitled to compensatory damages.

WHEREFORE, Plaintiff prays for judgment against ENDO's predecessor, AMS, as hereinafter set forth.

**SEVENTH CAUSE OF ACTION**
**[Breach of Express Warranty]**

66. Plaintiff hereby incorporates by reference, as if fully set forth herein, each and every allegation contained preceding paragraphs, inclusive, of this Complaint.

67. ENDO's predecessor, AMS, expressly warranted to Plaintiff and/or her authorized agents or sales representatives, in publications, and other communications intended for medical patients, and the general public, that the defective subject synthetic mesh system was safe, effective, fit and proper for their intended use.

68. Plaintiff, and Plaintiff's physicians reasonably relied upon the skill and judgment of ENDO's predecessor, AMS, and upon said express warranty, in using the aforesaid product. The warranty and representations were untrue in that the product caused severe injury to Plaintiff and was unsafe and, therefore, unsuited for the use in which it was intended and caused Plaintiff to sustain damages and injuries herein alleged.

Case 2:11-cv-07131-AB Document 1-1 Filed 11/15/11 Page 19 of 28

69. As soon as the true nature of the product, and the fact that the warranty and representations were false, were ascertained, said ENDO's predecessor, AMS, had ample and sufficient notice of the breach of said warranty.

WHEREFORE, Plaintiff prays for judgment against ENDO's predecessor, AMS, as hereinafter set forth.

**EIGHTH CAUSE OF ACTION**
**[Fraud]**

70. Plaintiff hereby incorporates by reference, as if fully set forth herein, each and every allegation contained preceding paragraphs, inclusive, of this Complaint.

71. ENDO's predecessor, AMS, falsely and fraudulently represented to Plaintiff, her physicians, and to members of the general public that the aforesaid product was safe, effective, reliable, consistent, and better than the other similar procedures when used in the manner intended by the manufacturer. The representations by said ENDO's predecessor, AMS, were in fact, false. The true facts include, but are not limited to that the aforesaid product was not safe to be used for POP and/or SUI repair, and was, in fact, dangerous to the health and body of Plaintiff.

72. When the ENDO's predecessor, AMS, made these representations, they knew that they were false. ENDO's predecessor, AMS, made said representations with the intent to defraud and deceive Plaintiff, and with the intent to induce Plaintiff to act in the manner herein alleged, that is to use the aforementioned product for POP and/or SUI repair.

73. At the time ENDO's predecessor, AMS, made the aforesaid representations Plaintiff took the actions herein alleged, Plaintiff and her physicians were ignorant of the falsity of these representations and reasonably believed them to be true. In reliance upon said representations, Plaintiff was induced to, and did, use the aforesaid product as herein described. If

Case ID: 111002259

Case 2:11-cv-07131-AB Document 1-1 Filed 11/15/11 Page 20 of 28

Plaintiff had known the actual facts, she would not have taken such action. The reliance of Plaintiff and her physicians upon ENDO's predecessor's, AMS, representations were justified because said representations were made by individuals and entities who appeared to be in a position to know the true facts.

74. As a result of ENDO's predecessor, AMS, fraud and deceit, Plaintiff was caused to sustain the herein described injuries and damages

75. In doing the acts herein alleged, the ENDO's predecessor, AMS, acted with oppression, fraud, and malice, and Plaintiff is therefore entitled to punitive damages to deter ENDO's predecessor, AMS, and others from engaging in similar conduct in the future. Said wrongful conduct was done with advance knowledge, authorization and/or ratification of an officer, director and/or managing agent of ENDO's predecessor, AMS.

WHEREFORE, Plaintiff prays for judgment against ENDO's predecessor, AMS, as hereinafter set forth.

**NINTH CLAIM FOR RELIEF**
**[Fraud by Concealment]**

76. Plaintiff hereby incorporates by reference, as if fully set forth herein, each and every allegation contained preceding paragraphs, inclusive, of this Complaint.

77. At all times mentioned herein, ENDO's predecessor, AMS, had the duty and obligation to disclose to Plaintiff and to her physicians, the true facts concerning the aforesaid product, subject synthetic mesh system, that is, that said product was dangerous and defective, lacking efficacy for its purported use and lacking safety in normal use, and how likely it was to cause serious consequences to users including permanent and debilitating injuries. ENDO's

Case ID: 111002259

predecessor, AMS, made the affirmative representations as set forth above to Plaintiff and her physicians and the general public prior to the date subject synthetic mesh system were implanted in Plaintiff, while concealing material facts.

78. At all times herein mentioned, ENDO's predecessor, AMS, willfully, and maliciously concealed facts as set forth above from Plaintiff and her physicians, and therefore, Plaintiffs, with the intent to defraud as herein alleged.

79. At all times herein mentioned, neither Plaintiff nor her physicians were aware of the facts set forth above, and had they been aware of said facts, they would not have acted as they did, that is, would not reasonably relied upon said representations of safety and efficacy and utilized the subject synthetic mesh system for POP and/or SUI repair. ENDO's predecessor, AMS's representations were a substantial factor in Plaintiff utilizing the subject synthetic mesh system for correction of POP and/or SUI.

80. As a result of the concealment of the facts set forth above, Plaintiff sustained injuries as hereinafter set forth.

81. In doing the action herein alleged, ENDO's predecessor, AMS, acted with oppression, fraud, and malice and Plaintiff is therefore entitled to punitive damages in an amount reasonably related to Plaintiff's actual damages, and to ENDO'S predecessor, AMS's wealth, and sufficiently large to be an example to others, and to deter ENDO's predecessor, AMS, and others from engaging in similar conduct in the future.

WHEREFORE, Plaintiff prays for judgment against ENDO's predecessor, AMS, as hereinafter set forth.

## TENTH CAUSE OF ACTION
**[Negligent Misrepresentation]**

82. Plaintiff hereby incorporates by reference, as if fully set forth herein, each and every allegation contained preceding paragraphs, inclusive, of this Complaint.

83. At all relevant times herein, ENDO's predecessor, AMS, represented to. Plaintiff and her physicians that the subject synthetic mesh system were safe to use to correct POP and/or SUI knowing that the subject synthetic mesh system were defective and capable of causing the injuries described herein.

84. The ENDO's predecessor, AMS, made the aforesaid representations with no reasonable ground for believing them to be true when ENDO's predecessor, AMS's own data showed the subject synthetic mesh system to be defective and dangerous when used in the intended manner.

85. The aforesaid representations were made to the physician prescribing subject synthetic mesh system prior to the date it was prescribed to Plaintiff and her physicians with the intent that Plaintiff and her physicians rely upon such misrepresentations about the safety and efficacy of subject synthetic mesh system. Plaintiff and her physicians did reasonably rely upon such representations that the aforesaid product was safe for use for POP and/or SUI repair.

86. The representations by said ENDO's predecessor, AMS, to Plaintiffs were false, and thereby caused Plaintiff's injuries described herein.

WHEREFORE, Plaintiff prays for judgment against ENDO's predecessor, AMS, as hereinafter set forth.

**ELEVENTH CAUSE OF ACTION**
**[Violation of Pennsylvania's Unfair Trade Practices and Consumer Protection Law]**

87. Plaintiff hereby incorporates by reference, as if fully set forth herein, each and every allegation contained preceding paragraphs, inclusive, of this Complaint.

88. By reason of the conduct as alleged herein, ENDO's predecessor, AMS, violated Pennsylvania's Unfair Trade Practices and Consumer Protection Law (UTPCPL), 73 P.S. 18 § 201-1, et seq., by engaging in fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding.

89. ENDO's predecessor, AMS, knowingly and intentionally induced Plaintiff to use the synthetic mesh system through the use of false and/or misleading advertising, representations and statements.

90. The synthetic mesh systems failed to perform as represented and advertised, and in fact were unsafe.

91. ENDO's predecessor, AMS, induced the Plaintiff and Plaintiff's physician, through the use of false and/or misleading advertising, representations, and statements, as described above, to use and/or implant the synthetic mesh system, which ENDO's predecessor, AMS, manufactured and/or distributed and sold, all in violation of the UTPCPL which proscribes, among other things:

i. Engaging in unfair trade practices as defined in the statute by making false and misleading oral and written statements that have the capacity, tendency or effect of deceiving or misleading consumers;

ii. Engaging in unfair trade practices as defined in the statute by making representations that its' synthetic mesh systems had an approval, characteristic, use or benefit which they did not have, including but not limited to statements concerning the health consequences of the use of the synthetic mesh systems;

iii. Engaging in unfair trade practices as defined in the statute by failing to state material facts, the omission of which deceive or tend to deceive, including but

not limited to, facts relating to the health consequences of the use of these synthetic mesh systems; and

iv. Engaging in unfair trade practices as defined in the statute through deception, fraud, misrepresentation, and knowing concealment, suppression and omission of material facts with the intent that consumers rely upon the same in connection with the use and continued use of the synthetic mesh systems.

92. As a direct and proximate result of ENDO's predecessor, AMS's statutory violations, Plaintiff had the synthetic mesh system(s) implanted, which Plaintiff would not have had implanted had ENDO's predecessor, AMS, not issued false and/or misleading advertising, representations and statements.

93. By reason of such violations and pursuant to the laws and regulations of this state, Plaintiff is entitled to recover all of the monies paid for the products; to be compensated for the cost of medical care arising out of the use of these synthetic mesh systems; together with any and all actual damages recoverable under the law including, but not limited to, past medical expenses, past wage loss, past pain, suffering, disability and emotional distress.

94. In addition, Plaintiff is entitled to recover fees and disbursements, including costs of investigation, reasonable attorneys' fees, and any other equitable relief as determined by this Court.

95. ENDO's predecessor, AMS, marketed to physicians in a manner calculated to increase sales of the synthetic mesh systems and resultant profits to the synthetic mesh systems company at the expense of, and in conscious disregard for, the health and safety of Plaintiff, and other patients alike, as safer and more effective alternative treatments existed.

96. The conduct of the ENDO's predecessor, AMS, undertaken consciously and with notice, evinces a willful, wanton, and conscious disregard for the rights, healthy, and safety of patients, including the Plaintiff, who would be expected to be induced, by that conduct, to use the

Case 2:11-cv-07131-AB Document 1-1 Filed 11/15/11 Page 25 of 28

synthetic mesh systems leading to grievous, debilitating, and potentially permanent personal injury.

97. As a direct and proximate result of the wrongful acts of the ENDO's predecessor, AMS, Plaintiff developed severe side effects and suffered irreparable bodily injury; suffered and will continue to suffer great pain of body and mind; suffered and will continue to suffer great embarrassment and humiliation; suffered and will continue to suffer permanent impairment to Plaintiffs earnings capacity; has incurred and will continue to incur expenses for medical treatment of Plaintiff's injuries; has suffered and will continue to suffer the loss of enjoyment of life and has been otherwise damaged to be further shown by the evidence.

WHEREFORE, Plaintiff prays for judgment against ENDO's predecessor, AMS, as hereinafter set forth.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff requests trial by jury and that the Court grant the following relief against ENDO, on all counts of this Complaint, including:

(A) Money Damages representing fair, just and reasonable compensation for respective common law and statutory claims in excess of $50,000.00;

(B) Lost Wages;

(C) Punitive and/or Treble Damages pursuant to state law;

(D) Attorneys' fees pursuant to state law;

(E) Pre-judgment and post-judgment interests as authorized by law on the judgments which enter on Plaintiff's behalf;

(F) Costs of suit and expenses;

(G) Delay Damages, and

(H) Such other relief as is deemed just and appropriate.

Respectfully Submitted,

/s/

Rosemary Pinto, Esq.
Pa. Bar No. 53114
RPinto@feldmanpinto.com
**FELDMAN & PINTO**
1604 Locus St, FL 2R
Philadelphia, PA 19103
Telephone: 215- 546-4385

Scott A. Love, Esq.
Pa. Bar No. 205329
slove@triallawfirm.com
Clayton A. Clark, Esq.
cclark@triallawfirm.com
**CLARK, BURNETT, LOVE & LEE, GP**
440 Louisiana, 16th Floor
Houston, TX 77002
(713) 757-1400 Telephone
(713) 759-1217 Facsimile
**Attorneys for Plaintiff**

Case 2:11-cv-07131-AB Document 1-1 Filed 11/15/11 Page 27 of 28

Rosemary Pinto, Esq.
Pa. Bar No. 53114
RPinto@feldmanpinto.com
**FELDMAN & PINTO**
1604 Locus St, FL 2R
Philadelphia, PA 19103
Telephone: 215- 546-4385

Scott A. Love, Esq.
Pa. Bar No. 205329
slove@triallawfirm.com
Clayton A. Clark
cclark@triallawfirm.com
**CLARK, BURNETT, LOVE & LEE, GP**
440 Louisiana, 16th Floor
Houston, TX 77002
(713) 757-1400 Telephone
(713) 759-1217 Facsimile
**Attorneys for Plaintiff**

**This is Not An Arbitration Case. An Assessment of Damages Is Required**

| | |
|---|---|
| **KACI MITCHELL**<br>**8640 Booth Road**<br>**Klamath Falls, OR 97603**<br><br>**Vs.**<br><br>**ENDO PHARMACEUTICALS**<br>**100 Endo Boulevard**<br>**Chadds Ford, Pennsylvania 19317** | **COURT OF COMMON PLEAS**<br>**PHILADELPHIA COUNTY**<br><br>**____ TERM 2011**<br><br>**NO. ______________**<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

**Attorney's Verification**

I, Scott A. Love, hereby state:

1. I am one of the Plaintiff's Attorneys in this action.

2. I submit that, pursuant to Pa. R.C.P. No. 1024, I am a person having sufficient knowledge and belief to verify this pleading.

3. Plaintiff is outside the jurisdiction of this Court and the verifications cannot be

obtained within the time allowed for filing.

4. I verify that the statements made in the foregoing Civil Action Complaint are true and correct to the best of my knowledge, information and belief; and

5. I understand that the statements in said Civil Action Complaint are subject to the penalties of 18 Pa. C.S.A. §4904 relating to unsworn falsification to authorities.

Date: 10-19-2011

Scott A. Love